**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

KAREEM ASHE,                                   *
                                               *
    Plaintiff,                                 *
                                               *
    v.                                         *     Civil Action No. AW-06-1293
                                               *
GIANT OF MARYLAND, L.L.C.,                     *
                                               *
    Defendant.                                 *
                                               *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Kareem Ashe ("Plaintiff" or "Ashe"), a former employee of Defendant Giant of Maryland L.L.C. ("Defendant" or "Giant"), brings this employment discrimination action against Defendant. Currently pending before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint [28]. Plaintiff, acting *pro se*, contests this motion. The Court has reviewed the entire record, as well as the pleadings with respect to the instant motion. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons set forth below, this Court will GRANT-IN-PART and DENY-IN-PART Defendant's motion to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant operates a chain of retail grocery stores where its store employees are employed under collective bargaining agreements with certain unions, including United Food and Commercial Workers Union, Local 400, AFL-CIO-CLC ("Local 400" or "the Union"). Plaintiff was a member of the bargaining unit represented by the Union as his exclusive bargaining agent under the terms of a collective bargaining agreement. Plaintiff worked at Defendant's Largo, Maryland store from September 25, 2003 until his termination on June 24, 2005. Defendant's articulated reason for terminating Plaintiff was for excessive absenteeism in violation of an Absentee Control Program

negotiated pursuant to the collective bargaining agreement with Local 400.

The Union filed a grievance on behalf of Plaintiff challenging his discharge pursuant to Article 21 of the collective bargaining agreement. At a grievance hearing, Plaintiff did not contest his dismissal yet requested for pay for his accumulated unused vacation. Subsequently, the Union took no further action under the collective bargaining agreement and arbitration was never requested.   Plaintiff alleges that on December 19, 2004, he received a disciplinary notice from Defendant for violating company policy by wearing a doo-rag to work. Plaintiff claims that because he responded to Defendant's disciplinary notice, by writing a letter accusing Assistant Manager Rodney Harris ("Harris") of retaliating against him. Plaintiff alleges that Defendant further retaliated against Plaintiff by failing to provide him with an evaluation after twenty months of employment with Defendant. Furthermore, Plaintiff claims that he received disciplinary notices every month, subsequent to his letter to Defendant, until he was ultimately terminated. Plaintiff further alleges that Defendant retaliated against him, by terminating him, for leaving work early to file a formal complaint with the Equal Employment Opportunity Commission ("EEOC").

Plaintiff originally filed his eight count *pro se* complaint in the Superior Court for the District of Columbia, on December 2, 2005, alleging discrimination based on race and sex in violation of the District Court of Columbia Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401.01 (Counts I, IV, V, and VI); retaliation in violation of the DCHRA (Count II and III); constructive discharge in violation of the public policy as articulated in the DCHRA (Count VII); and breach of employment contract (Count VIII). On December 28, 2005, Defendant removed this action from the District of Columbia Superior Court to the United States District Court for the District of Columbia. On January 6, 2006, Defendant filed a Motion to Dismiss Plaintiff's

Complaint. On April 18, 2006, the United States District Court for the District of Columbia entered a Memorandum and Transfer Order denying the motion to dismiss without prejudice, granting Plaintiff leave to amend his complaint to invoke Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et. seq.* ("Title VII") and transferring the case to this Court.[1]  The case was received by this Court on May 22, 2006. Subsequently, Defendant filed a renewed motion to dismiss Plaintiff's Complaint. On March 27, 2007, the Court issued an Order denying without prejudice Defendant's renewed motion to dismiss, granting Plaintiff's motion to leave to file his Amended Complaint.

Plaintiff then filed a seven-count Amended Complaint[2] alleging (1) Count One - Discrimination in the Course of Employment; (2) Count Two - Retaliatory Conduct During the Course of Employment; (3) Count Three - Retaliation Leading to Termination of Employment; (4) Count Four - Discrimination on the Basis of Race in the Course of Employment in Violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1) ("Equal Pay Act") and the Whistle Blower Act; (5) Count Six - Discrimination of the Basis of Sex in the Termination of Employment in Violation of the Equal Pay Act, and the Whistle Blower Act; (6) Count Seven - Constructive Discharge in Violation of Public Policy; and (7) Count Eight - Breach of the Employment Contract. Currently pending is Defendant's Motion to Dismiss Plaintiff's Amended Complaint [28]. Plaintiff opposes

---

[1] "Title VII's venue provision, however, requires such an action to be brought (1) in the judicial district in the state where the alleged wrongdoing was committed; (2) in the judicial district where the relevant employment records are maintained and administered; (3) in the judicial district where the plaintiff would have worked but for the alleged discrimination; or, if the action cannot be brought in any of the preceding districts, (4) in the judicial district where defendant's principal office is located. 42 U.S.C. § 2000e-5(f)(3) ... Venue thus could not be here under Title VII. Rather than dismiss the case at this time, however, the Court Finds that it is in the interest of justice to transfer it to the appropriate venue for litigating the predominate claim of employment discrimination." Memo. and Transfer Order, U.S. Dist. Ct. D.C. at 2.

[2] Plaintiff failed to allege a "Count Five" in his Amended Complaint.

3

the motion.  The motion is ripe, and the Court now issues this opinion.

## STANDARD OF REVIEW

### Motion to Dismiss

A court should deny a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief."  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In determining whether to dismiss a complaint pursuant to Rule 12(b)(6), this Court must view the well-pleaded material allegations in the light most favorable to the plaintiff and accept the factual allegations contained within the plaintiff's complaint as true.  *See Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997) (*citing Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 217-18 (4th Cir. 1994)); *Chisolm v. TranSouth Finan. Corp.*, 95 F.3d 331, 334 (4th Cir. 1996).

The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation."  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)); *Young v. City of Mount Ranier*, 238 F.3d 576, 577 (4th Cir. 2001) (the mere "presence ... of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)").  Nor is the Court "bound to accept [Plaintiff's] conclusory allegations regarding the legal effect of the facts alleged."  *United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1994); *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).  Therefore, a complaint may be dismissed as a matter of law if it lacks a cognizable legal theory or if it alleges insufficient facts to support a cognizable legal theory.  *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984) (citing 2A J. Moore, Moore's Federal Practice

¶ 12.08 at 2271 (2d ed. 1982)).

## ANALYSIS

Defendant argues that Plaintiff's Amended Complaint should be dismissed because (1) Plaintiff fails to state a claim under the Equal Pay Act, the Whistle Blower Act, and Title VII; (2) Plaintiff's constructive discharge in violation of public policy claim fails because it improperly predicates itself on an alleged violation of the Equal Pay Act, Title VII, and the Fourteenth Amendment, and furthermore fails because it is inapplicable to Giant, a private employer; and (3) Plaintiff's breach of contract claim is preempted by Section 301 of the Labor-Management Relations Act, 1947, 29 U.S.C. § 185 ("LMRA"), where Plaintiff fails to state a claim upon which relief may be granted under Section 301.  The Court will address each of Defendant's arguments in turn.

### 1.  Equal Pay Act

To establish a *prima facie* case of discrimination under the Equal Pay Act, a plaintiff must show (1) he received lower pay than a female co-employee (2) for performing work substantially equal in skill, effort, and responsibility under similar working conditions.  *See Strag v. Bd. of Trustees*, 55 F.3d 943, 948 (4th Cir. 1995).  Here, Plaintiff does not allege that he was paid less than any co-employee, regardless of sex.  Therefore, as Plaintiff has failed to allege any facts relevant to this claim, the Court will GRANT Defendant's motion to dismiss as to Plaintiff's Equal Pay Act claims in Counts One, Two, Three, Four, and Six of his Amended Complaint.

### 2.  Whistle Blower Act

In each count of Plaintiff's Amended Complaint, Plaintiff alleges that Defendant discriminated against him in violation of the "Whistle Blower Act."  Plaintiff, however, fails to identify a specific "Whistle Blower Act" that Defendant violated when it discriminated against him.

The Court, in construing Plaintiff's Amended Complaint in the light most favorable to him, will interpret Plaintiff's alleged claims of discrimination in violation of the Federal Whistleblower Protection Act of 1989, 5 U.S.C. §1213, *et seq.*, ("WPA").

The WPA was "enacted for the purpose of protecting federal employees who disclose government illegality, waste, and corruption."  5 U.S.C. § 1201.  Here, Plaintiff is neither a federal employee nor does he allege that he disclosed information as to Defendant's government illegality, waste, or corruption.  Therefore, the Court will GRANT Defendant's motion to dismiss as to Plaintiff's WPA claims.

3.  Title VII

*Exhaustion of Administrative Remedies*

To successfully seek judicial relief, a plaintiff must first exhaust his administrative remedies as to each claim of discrimination under Title VII.  *See* 42 U.S.C. § 2000e-5(b).  As the Fourth Circuit held, "[i]t is axiomatic that a claimant under Title VII must exhaust his administrative remedies by raising his claim before the EEOC."  *Sloop v. Memorial Mission Hosp., Inc.,* 198 F.3d 147, 148 (4th Cir. 1999), citing *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) ("Where ... claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred."  In *Sloop*, the Court barred the plaintiff from raising a Title VII retaliation claim when the administrative charges only alleged age discrimination.  *Sloop*, 198 F.3d at 149.  More recently, the Fourth Circuit has affirmed that "plaintiff's claim generally will be barred if his charge alleges discrimination on one basis--such as race--and he introduces another basis in formal litigation--such as sex."  *Chacko v. Patuxent Intst.*, 429 F.3d 505, 509 (4th Cir. 2005).

Here, Plaintiff's EEOC complaint of September 2005 alleged discrimination based on race and retaliation.[3]  (Def. Ex. C, EEOC Notice of Charge of Discrimination, Sept. 28, 2005.)   In October 2005, the EEOC responded to this complaint and addressed each of the two claims, issuing a dismissal and release to sue letter on October 7, 2005.  (Def. Ex. D, EEOC Dismissal and Notice of Rights.)   Plaintiff's Amended Complaint adds to these allegations with four new basis for discrimination:  color, religion, sex, and national origin.  (Pl. Am. Compl. at 1.)  Because he has not raised these claims before the EEOC, Plaintiff has failed to exhaust his administrative remedies as to color, religion, sex, and national origin.  *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (noting that failure to exhaust administrative remedies deprives a federal court of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1); *Evans v. B.F. Perkins Co., a Div. Of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (holding that the plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court).  Therefore, as Plaintiff has failed to meet his burden, the Court will dismiss Plaintiff's color, religion, sex, and national origin claims for lack of jurisdiction.

*Racial Discrimination - Disparate Treatment*

Title VII makes it unlawful for an employer "... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals race ...."  42 U.S.C. § 2000e-2(a)(2).  Defendant urges the Court to dismiss Plaintiff's racial discrimination claim under Title VII for failure to state a claim.  In order to state a disparate

---

[3]  A September 15, 2005 complaint to the EEOC, included "unlawful termination" as a basis for discrimination. (*See* Def. Ex. C, EEOC Charge of Discrimination, Sept. 15, 2005.)  The EEOC may have considered unlawful termination in its investigation of Plaintiff's race and retaliation claims, and therefore the Court will assume that Plaintiff has exhausted his administrative remedies as to unlawful termination.

treatment discrimination claim, a plaintiff must allege facts demonstrating: (1) that he is a member of a protected class; (2) that his job performance was satisfactory; (3) that he suffered an adverse employment action; and (4) that similarly situated employees outside his protected class were treated more favorably. *Frank v. England*, 313 F. Supp. 2d 532, 538 (D. Md. 2004). Although a plaintiff is not required to plead a *prima facie* case of discrimination or satisfy the evidentiary burden established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), in order to survive a Rule 12(b)(6) motion to dismiss, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002), he nonetheless must plead facts sufficient to support a claim for relief. *Bass v. E.I. Dupont De Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2002).

Here, assuming *arguendo* that Plaintiff has alleged sufficient facts to establish the first three prongs to state a claim for disparate treatment based on race, Plaintiff fails to allege the last prong. Specifically, Plaintiff fails to allege any facts that similarly situated employees outside his protected class were treated more favorably than him. Therefore, Plaintiff has failed to state a *prima facie* case for disparate treatment based on race in violation of Title VII. Accordingly, the Court will GRANT Defendant's motion to dismiss Plaintiff's disparate treatment claim.

*Racial Discrimination - Hostile Work Environment*

In order to survive a motion to dismiss a claim for hostile work environment, a plaintiff must sufficiently allege: (1) that he was subject to unwelcome conduct; (2) that the harassment was based on his race; (3) that the harassment was sufficiently severe or pervasive to create an abusive work environment; and (4) that there is some basis for imposing liability on the employer. *Meritor Savings Bank v. Vinson*, 477 U.S. 507 (1986); *White v. Federal Exp. Corp.*, 939 F.2d 157 (4th Cir. 1991). Here, the only instances of unwelcome conduct Plaintiff claims he endured are: (1) that

8

Harris demanded Plaintiff to remove the skull cap from his head[4] (Pl's Ex. #4); and (2) that Defendant's Disciplinary Notice, summarizing the aforementioned incident containing a characterization of Ashe's skull cap as a "doo-rag", was racially offensive. *Id.* Here, even if the Court interprets the alleged facts in the light most favorable to Plaintiff, that the characterization of his skull cap as a "doo-rag" was racially motivated, because Plaintiff only provides these two isolated incidents, Plaintiff fails to make factual allegations of severe and pervasive harassment. Therefore, the Court will GRANT Defendant's motion to dismiss Plaintiff's hostile work environment claim.

*Retaliation*

Title VII prohibits an employer from retaliating against employees who exercise their Title VII rights.   In particular, it is unlawful for an employer to discriminate against an individual employee because he has "made a charge, testified, assisted, or participated in any manner in investigation, proceeding, or hearing under [Title VII]."   42 U.S.C. 2000e-3.   In order to state a claim for retaliation, an employee must show (1) that he engaged in a protected activity; (2) that his employer took an employment action against him that a reasonable employee would have found materially adverse; and (3) that there was a causal connection between the protected activity and the adverse employment action.   *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2415 (2006).

In his Amended Complaint, Plaintiff alleges four instances of retaliation in violation of Title VII.   Plaintiff claims that Defendant retaliated against him by: (1) "wrongfully accusing [him] of

---

[4] Plaintiff alleges that the incident was humiliating and demeaning because the incident occurred in front of several customers.

wearing a Doo Rag" [5] (Pl. Compl. ¶5); (2) by failing to give him an evaluation, although Plaintiff

had worked for Defendant for twenty months (Pl. Compl. ¶7); (3) issuing him Disciplinary Notices

(Pl. Compl. ¶8); and (4) by terminating him (Pl. Compl. ¶12).  The standard for demonstrating a

materially adverse employment action is less stringent under Title VII's retaliation provisions.  *See*

*Burlington Northern*, 126 S. Ct. at 2414.  Nevertheless, a plaintiff is still required to demonstrate

actual harm or injury caused by the retaliatory conduct.  *Id.*  Unlike Title VII's substantive

provisions, however, the anti-retaliation provision "is not limited to discriminatory actions that affect

the terms and conditions of employment."  *Id.* at 2412-13.  Rather, Ashe need only allege that a

reasonable employee would have found the action "materially adverse," meaning it "might have

'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Id.* at 2415.

This standard is an objective one.  *Id.*

Here, the Court does not believe that the instances of retaliation articulated by Plaintiff,

mentioned *supra,* rise to a level of materially adverse conduct.  Specifically, the Court does not find

that Defendant's request for Plaintiff to remove his skull cap, Defendant's failure to give Plaintiff

an evaluation, and Defendant's issuance of a few disciplinary notices would dissuade a reasonable

worker from making or supporting a charge of discrimination.  In fact, Plaintiff, after enduring these

incidents,  later filed a charge of discrimination with the EEOC.  Therefore, the Court will GRANT

Defendant's motion to dismiss as to Plaintiff's first three claims of retaliation in violation of Title

VII.

However, regarding the fourth allegation, the Court believes that at this stage of litigation,

---

[5] Plaintiff does not contest that he wore a doo-rag.  Instead, Plaintiff alleges that
Defendant's reference to Plaintiff's skull cap as a doo-rag is offensive.

Plaintiff has alleged sufficient facts to satisfy a retaliation claim.  Specifically, the Court finds that Plaintiff sufficiently alleges facts to defeat a motion to dismiss as to his termination by claiming: (1) that he engaged in a protected activity (when he filed an EEO Complaint); (2) that Defendant took an adverse employment action against him (by  terminating him); and (3) that he was terminated for leaving work to file an EEO Complaint (there was a causal connection between the protected activity and the adverse employment action).  *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2415 (2006).

In making a determination on Defendant's motion to dismiss, as to Plaintiff's retaliation claim for unlawful termination in violation of Title VII, the Court is not making an ultimate finding that Plaintiff's retaliation claim will prevail.  Instead, at this early stage of litigation, where there has not been any discovery and in interpreting the facts in the light most favorable to the non-movant, the Court finds that Plaintiff has presented sufficient facts to establish a *prima facie* case for retaliation.  Therefore, Defendant's motion to dismiss Plaintiff's claim for retaliation is DENIED.

4.  Constructive Discharge in Violation of Public Policy

An employee may maintain a cause of action for abusive discharge "when the motivation for the discharge contravenes some clear mandate of public policy."  *Adler v. American Standard Corp.*, 432 A.2d 464, 467 (Md. 1981).  Although originally designed to provide a remedy for the wrongful discharge of an employee at will, who otherwise would not have one, the judicially-created tort is available to employees who serve under contract as well as those who serve at will.  *Ewing v. Koppers Co.*, 537 A.2d 1173, 1175 (Md. 1988).  Nevertheless, the Maryland Court of Appeals has restricted the breadth of the tort.  "The tort action as we have recognized it is not intended to reach every wrongful discharge.  It is applicable only where the discharge contravenes some clear mandate

of public policy." *Id.*

However, "[w]here the public policy foundation for the abusive discharge claim is expressed in a statute, and that statute already contains a remedy for vindicating the public policy objectives, then judicial recognition of an abusive discharge claim is considered both redundant and inappropriate." *Miller v. Fairchild Indus.* 629 A.2d 1293, 1300 (Md. Ct. Spec. App. 1993), *cert. den.*, 634 A.2d 46 (Md. 1993). Therefore, in abusive discharge claims motivated by employment discrimination already prohibited by Title VII, which provides remedies for that type of discrimination, "the generally accepted reason for recognizing the tort, that of vindicating an otherwise civilly unremedied public policy violation, does not apply." *Makovi v. Sherwin-Wiliiams Co.*, 561 A.2d 179, 190 (Md. 1989). In this case, Ashe bases his abusive discharge claim on racial discrimination and retaliation, which Title VII prohibits. *See Glezos v. Amalfi Ristorante Italiano, inc.*, 651 F.Supp. 1271, 1276 (D. Md. 1987) (finding that a constructive discharge claim could not lie where the claim was brought under Title VII, which provides exclusive federal remedies to vindicate sex discrimination in employment). Since Title VII offers remedies for racial discrimination and retaliation in employment, Ashe's claim of abusive discharge must be dismissed.

## 5.  Breach of Employment Contract

Plaintiff alleges that his termination constitutes a breach of his employment contract. Only a party to a contract can enforce that contract. *Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F.Supp. 312, 322 (D. Md. 1983). Furthermore, there must be a contract between the parties for there to be a breach. Here, Plaintiff fails to identify a contract or allege that there was any contract between him and Defendant, other than the collective bargaining agreement. Accordingly, there is no possible claim for a breach of contract.

Nevertheless, as Plaintiff is acting *pro se*, the Court will interpret Plaintiff's breach of contract claim as a breach of collective bargaining agreement action. Plaintiff's breach of collective bargaining agreement, however, is preempted by by Section 301 of the Labor-Management Relations Act, 1947 ("LMRA"). 29 U.S.C. § 185. Section 301 of the LMRA preempts state law claims whose resolution depends on the interpretation of the collective bargaining agreement. *See McCormick v. AT&T Technologies, Inc.*, 934 F.2d 531 (4th Cir. 1991). Plaintiff's claim turns on whether Giant's conduct violated the terms of the collective bargaining agreement, which requires interpretation of the collective bargaining agreement. Claims regarding the interpretation and application of collective bargaining agreements are governed solely by Section 301 of LMRA. *See United Steelworkers v. Rawson*, 495 U.S. 362, 368 (1990); *Jones v. Giant Foods, Inc.*, 2000 WL 1835393, at *5 (D. Md. 2000). Therefore, because resolving this claim would require interpreting the collective bargaining agreement, the LMRA preempts Plaintiff's claim for breach of collective bargaining agreement. Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's breach of collective bargaining agreement claim.

## CONCLUSION

For all of the aforementioned reasons, the Court will GRANT-IN-PART and DENY-IN-PART Defendant's Motion to Dismiss Plaintiff's Amended Complaint [28]. An Order consistent with this Memorandum Opinion shall follow.


Date:  <u>July 17, 2007</u>                                    <u>            /s/            </u>
                                                            Alexander Williams, Jr.
                                                            United States District Court Judge